**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1685
_____

IN RE DIET DRUGS (PHENTERMINE/FENFLURAMINE/
DEXFENFLURAMINE)
PRODUCT LIABILITY LITIGATION

Judith Dahlka, Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-99-cv-20593, MDL No. 1203)
District Judge:  Honorable Harvey Bartle, III
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 12, 2011
Before:  SLOVITER, FISHER and WEIS, Circuit Judges
(Opinion filed May 16, 2011)

_____

OPINION
_____

PER CURIAM.

Judith Dahlka appeals from the order of the District Court denying her

claim for benefits from the AHP Settlement Trust ("Trust").  We will affirm.

**I.**

Dahlka is a member of the certified settlement class who seeks benefits

under the Diet Drugs Nationwide Class Action Settlement Agreement ("Settlement

Agreement"). We have previously discussed the background of this litigation, the relevant terms of the Settlement Agreement and the relevant medical issues at some length, and we need not do so here. See, e.g., In re Diet Drugs, 543 F.3d 179, 181-90 (3d Cir. 2008).

Dahlka filed her claim with the Trust seeking $538,973 in benefits under Matrix A-1, Level II of the Settlement Agreement. That claim required her to show a reasonable medical basis for concluding that she has a qualifying condition, which in this case would be mitral regurgitation of at least a moderate level together with an enlarged left atrium. To that end, she submitted a February 19, 2002 echocardiogram together with a "Green Form" in which Dr. Linda Crouse attested that the echocardiogram showed moderate mitral regurgitation with an enlarged left atrium. She later withdrew that Green Form and submitted a second one in which Dr. Elias Kassab made the same attestation based on the same echocardiogram.

The Trust referred Dahlka's claim to an independent auditing cardiologist, Dr. Michele Penkala. Dr. Penkala concluded that there was no reasonable medical basis for Dr. Kassab's finding of moderate mitral regurgitation. On that basis, the Trust issued a post-audit determination denying Dahlka's claim. Dahlka contested the determination and submitted a second opinion that her echocardiogram shows moderate mitral regurgitation, this one from Dr. Peter Mancini. The Trust affirmed.

Dahlka contested that determination as well, so the Trust applied to the District Court for an order requiring Dahlka to show cause why her claim should be paid.

2

The District Court issued the order and referred the matter to a Special Master, who appointed Dr. Gary J. Vigilante as an independent technical advisor. Dr. Vigilante issued a report disagreeing with Dr. Penkala in certain respects but agreeing that there is no reasonable basis to conclude that Dahlka suffers from moderate mitral regurgitation. The Special Master then forwarded the record to the District Court for review. By order entered February 22, 2010, the District Court affirmed the Trust's denial of Dahlka's claim. Dahlka appeals.[1]

## II.

We have jurisdiction under 28 U.S.C. § 1291 to review the District Court's denial of Dahlka's claim. See In re Diet Drugs, 543 F.3d at 184 n.10. "We review a District Court's exercise of its equitable authority to administer and implement a class action settlement for abuse of discretion." Id. "'[T]o find an abuse of discretion the District Court's decision must rest on 'a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" Id. (citation omitted). In this case, the District Court thoroughly reviewed the record and concluded that Dahlka has not met her burden to show a reasonable basis for concluding that she suffers from moderate mitral regurgitation. See id. at 181. Dahlka raises essentially four challenges to that conclusion, but each lacks merit.

---

[1] On March 8, 2010, the District Court denied reimbursement of the fee Dahlka paid for the technical advisor. Dahlka mailed her notice of appeal before that ruling (and thus did not mention it), and she never amended her notice or filed another. Thus, although Dahlka refers to the ruling in her brief, we lack jurisdiction to review it.

First, Dahlka argues that her three cardiologists all agree that her echocardiogram shows moderate mitral regurgitation, while the opinions of the auditing physician Dr. Penkala and the technical advisor Dr. Vigilante conflict with each other. According to Dahlka, Dr. Vigilante "basically said that the auditor's report was medically unreasonable because he found that I had mild mitral valve regurgitation and an enlarged left atrium while the auditor stated I had neither," such that "the technical advisor did not agree with any aspect of the auditor's report."

That is not the case. It is true that Dr. Vigilante found a reasonable basis for concluding that Dahlka has an enlarged left atrium, but both Dr. Vigilante and Dr. Penkala agreed that there was no reasonable basis to conclude that Dahlka's mitral regurgitation was at the moderate level. Dr. Penkala opined that Dahlka's mitral regurgitation was "only trivial or physiologic" (Supp. Appx. at 65), while Dr. Vigilante opined that it was only "mild" (id. at 71-72). Their opinions are thus consistent in relevant part, and Dahlka has not meaningfully challenged them. After reviewing the record, we cannot say that the District Court clearly erred or otherwise abused its discretion in relying on those opinions.

Second, Dahlka argues that Drs. Kassab and Mancini based their opinions on measurements independent from those in the February 19, 2002 echocardiogram that Drs. Penkala and Vigilante found were flawed. Dahlka cites no evidence of record for that proposition. To the contrary, Dahlka acknowledges in her brief that Dr. Kassab

4

"performed another reading of my echocardiogram" (Appellant's Br. at 3), and Dr. Kassab's attestation states that he relied on the February 19 echocardiogram as well (Supp. Appx. at 37). As for Dr. Mancini, the District Court specifically discussed that issue and Dahlka has alleged no error in that regard. (Dist. Ct. Op. at 12-13 & n.13.)[2]

Third, Dahlka argues that the District Court failed to consider a phenomenon called "inter-reader variability," which she takes to mean that mere disagreements among physicians do not render any of their conclusions medically unreasonable. Once again, however, both Dr. Vigilante (Supp. Appx. at 72) and the District Court (Dist. Ct. Op. at 16) specifically took inter-reader variability into account, and Dahlka has not challenged the manner in which they did so.

Finally, Dahlka argues that the District Court was biased by the inclusion in her record of the original attestation of Dr. Crouse. According to Dahlka, she withdrew that attestation after learning that Dr. Crouse had been "accused of mis-reading/interpreting echocardiograms," and Dr. Crouse's attestation thus should not have been included in her record. There is no basis for concluding that the District Court was biased by that inclusion. Indeed, Dahlka herself continues to include Dr. Crouse in her repeated references to the "three board-certified cardiologists" who opined that she

---

[2] Dahlka has filed a motion to expand the record on appeal to include, inter alia, a July 30, 2007 letter from Dr. Mancini that she submitted to the District Court and that the District Court discussed. We grant her motion to the limited extent that we will consider the letter, though in doing so we do not suggest that the District Court erred in excluding it from the record. Dr. Mancini's letter does not state that he took independent measurements. Dahlka's motion to expand the record is otherwise denied.

5

suffers from moderate mitral regurgitation. As the Trust argues, she cannot have it both ways.[3]

Accordingly, we will affirm the judgment of the District Court.

---

[3] In addition to the denial of her claim, Dahlka challenges the validity of an amendment to the Settlement Agreement and alleges general improprieties in its administration. Those claims were not before the District Court and are not properly before us in the first instance. See In re Diet Drugs, 385 F.3d 386, 396 (3d Cir. 2004).